**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT WILLIAMS and DAVID WILLIAMS,** | § § § | |
| **Plaintiffs/Counter-Defendants,** | § § | |
| **v.** | § § | **Civil Action No. H – 03 – 4692** |
| **AMERUS LIFE INSURANCE CO.,** | § § | |
| **Defendant/Counter-Plaintiff/Third-Party Plaintiff,** | § § § | |
| **v.** | § § | |
| **ANNE WILLIAMS and PAUL WILLIAMS,** | § § § | |
| **Third-Party Defendants.** | § § | |

**<u>MEMORANDUM AND ORDER</u>**

AmerUs Life Insurance Company ("AmerUs") has filed a Motion for Final Summary Judgment, a Supplemental Motion for Summary Judgment, and a Second Supplemental Motion for Summary Judgment. Robert Williams, David Williams, and Anne Williams ("Beneficiaries") have filed a Motion for Partial Summary Judgment. The Court considers each Motion in turn.

## I.   BACKGROUND

This is an insurance benefits case. Beneficiaries are each a named beneficiary of a life insurance policy purchased in May 2000 from AmerUs. The three policies that are the subject of this suit (the "Policies") insured the life of Agnes Williams, who was the mother of Robert Williams and Anne Williams, and the grandmother of David Williams.

**A.      Prior Policies With Interstate Assurance Company**

Before applying for the Policies with AmerUs, Agnes Williams was insured by three life insurance policies with Interstate Assurance Company (the "Interstate Policies").  The Interstate Policies named Anne Williams and Robert Williams as beneficiaries, and David Williams as a contingent beneficiary.  On each of the three applications for the Interstate Policies, Agnes Williams provided a false social security number and indicated that she had not been diagnosed or treated for any of the listed medical conditions, including high blood pressure, heart disease, and diabetes.

After issuing the Interstate Policies, Interstate sued Agnes Williams, Robert Williams, and Anne Williams to rescind the Interstate Policies.  Interstate alleged that Agnes Williams had used a false social security number and made numerous misrepresentations on her applications, which the other defendants were aware of when they signed the applications.  In response to the lawsuit, Agnes Williams, Robert Williams, and Anne Williams all agreed to a rescission of the Interstate Policies.

**B.      The AmerUs Life Insurance Policies**

Six weeks after being sued by Interstate, Agnes Williams applied for the AmerUs Policies.  Again, Agnes Williams stated a false social security number on the applications[1] and indicated that she had never had symptoms of, or been treated for, the listed medical conditions, which included high blood pressure, heart disease, and diabetes.  As part of the application process, Agnes Williams received a medical examination by an AmerUs agent.  The applications were signed in May 2000.

---

[1] This false social security number was different from the false social security number she had provided on the applications for the Interstate Policies.

The Policies – which were contracted for in California, by a California resident, from an agent licensed in California – each contained the following incontestability clause:

> All statements made in the application or supplemental applications are considered representations and not warranties. No statement will be used to void this policy or to defend against a claim unless contained in the application, supplemental applications, or any amendments attached to the policy at issue or made part of the policy when a change becomes effective. The validity of this policy will not be contestable after it has been in force for two years during Agnes Williams's lifetime except for non-payment of premiums.

**C.    The Claims Process**

Agnes Williams died on December 4, 2001 – less than two years after issuance of the Policies – due to a stroke, severe coronary artery disease, and diabetes mellitus. Beneficiaries filed claims for the life insurance proceeds under the Policies. Beneficiaries each completed a Proof of Death form and provided a copy of the death certificate, which listed Agnes Williams' correct social security number and the fact that she used an alias, "Helen Walker."

AmerUs conducted a preliminary investigation of the claims and approved them. On May 2, 2002, AmerUs placed the proceeds of the Policies into three retained asset accounts called ProAsset Accounts. AmerUs retained possession and control of the proceeds while Beneficiaries were able to withdraw up to the full amount of the proceeds by writing checks from a personalized checkbook. All proceeds placed in the ProAsset Accounts would earn interest at competitive money market rates until they were withdrawn. AmerUs sent each Beneficiary a personalized checkbook, along with a form letter and brochure providing general information about the ProAsset Account.

After AmerUs sent Beneficiaries the ProAsset Account information and placed the proceeds in the ProAsset Accounts, AmerUs continued its investigation of the claims when it retrieved voluminous medical records under Agnes Williams' correct social security number and

the "Helen Walker" alias.   These medical records revealed numerous discrepancies between Agnes Williams' medical history and the medical responses she provided on the applications for insurance.   The records showed that Agnes Williams suffered from a wide range of ailments, including hypertensive diabetic coronary heart disease with cardiomyopathy, congestive heart failure, myocardial infarction, diabetes mellitus, peptic ulcer with gastrointestinal bleed, chronic renal insufficiency, acute and chronic gout, acute cellulites, and Crohn's disease; none of which was listed on her applications.   Though AmerUs had discovered some of these medical problems during its preliminary investigation of Beneficiaries' claims, it did not know, until further investigation, that the problems existed prior to the time the applications were signed.

On July 22, 2002, AmerUs placed a "legal hold" on the ProAsset Accounts.   On July 24, 2002, AmerUs informed Beneficiaries that AmerUs was temporarily restricting their access to the funds in the ProAsset Accounts due to the numerous discrepancies they had recently discovered.   AmerUs stated that it intended to contact Beneficiaries by August 16, 2002, to advise them of the status of its evaluation of their claims.   On August 16, 2002, AmerUs informed Beneficiaries that its evaluation was taking longer than expected and that it would provide another update by August 30, 2002.

On August 23, 2002, Beneficiaries' attorney sent AmerUs a demand letter requesting that the hold on the ProAsset Accounts be lifted immediately.   On August 29, 2002, AmerUs sent Beneficiaries a letter stating that it had completed its evaluation, and having reviewed the extensive medical records, AmerUs refused to be bound by the Policies and would seek a judicial determination as to its rights and responsibilities under the Policies.

D.      **Procedural History**

Robert Williams and David Williams filed suit in Texas state court on October 1, 2003. AmerUs removed the case to federal court and filed a counterclaim against Robert Williams and David Williams, and a third-party complaint against Anne Williams and Paul Williams.[2]  Anne Williams filed a third-party counterclaim against AmerUs.

Each party has amended its claims several times.  Beneficiaries seek recovery of the insurance proceeds in the ProAsset Accounts on the following grounds:  (1) fraud; (2) negligent misrepresentation; (3) conversion; (4) unjust enrichment; (5) money had and received; (6) promissory estoppel; (7) waiver; (8) breach of contract; and (9) bad faith.  Additionally, Robert Williams and David Williams, who are Texas residents, assert claims for violations of the Texas Deceptive Trade Practices Act and the Texas Liability Act.

AmerUs has asserted claims for:  (1) fraud and fraudulent inducement; (2) aiding and abetting; and (3) seeks a declaratory judgment to extinguish its liability under the Policies. AmerUs also asserts a number of defenses, including:  (1) lack of consideration; (2) lack of conditions precedent; (3) estoppel; (4) misrepresentation/concealment; (5) unclean hands; (6) laches; and (7) waiver.

Beneficiaries filed a Motion for Partial Summary Judgment.  AmerUs has filed a Motion for Final Summary Judgment, a Supplemental Motion for Summary Judgment, and a Second Supplemental Motion for Summary Judgment.  As AmerUs correctly points out, if the Court determines that the Policies are void ab initio, then there is no need to determine the merits of Beneficiaries' claims because these claims depend on the validity of the Policies.  The Court will therefore begin with an analysis of the validity of the Policies.

---

[2] Paul Williams was dismissed from this suit by Judge Atlas prior to the case being transferred to the present Court.

## II.      SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law, based on the evidence thus far presented. *See* Fed. R. Civ. P. 56(c). "Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations and citations omitted). A genuine issue of material facts exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.*

If a party fails to prove an essential element of its case, then all other facts are necessarily rendered immaterial and summary judgment must be entered for the opposing party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the opposing party shows that there is a lack of evidence to support a party's case, that party "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Kee*, 247 F.3d at 210 (quotation and citation omitted).

## III.      CHOICE OF LAW

The Court must first decide which jurisdiction's laws apply to the case. AmerUs maintains that the rights of the parties under the Policies are governed by California law. Beneficiaries agree that California law applies to their claims related to the insurance policies, but Robert Williams and David Williams contend that Texas law governs their claims related to the ProAsset Accounts.

6

"To determine the applicable law, a federal court sitting in diversity applies the choice of law rules of the forum." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003). "Texas courts use the Restatement's 'most significant relationship' test to decide choice of law issues." *Id*. at 727. The Court need not delve into a discussion of the Texas choice of law rules, however, to determine that California law applies to all claims in this suit.[3]

Robert Williams and David Williams concede that California law applies to their claims related to the insurance policies, but make an arbitrary distinction in stating that their claims related to the ProAsset Accounts are separate from their claims related to the insurance policies. The ProAsset Accounts, however, are completely dependent on the Policies, as they only exist as benefits of the Policies. The claims related to the ProAsset Accounts are therefore necessarily related to the Policies and there is no rational basis to separate them and apply different law to them. California law governs all the claims in this case.

## IV. THE POLICIES ARE VOID UNDER CALIFORNIA LAW

AmerUs argues that the Policies are void ab initio under California law because Agnes Williams materially misrepresented her medical history on the applications. Under California law, each party to an insurance contract is under a duty to communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and which the other does not have the means of ascertaining. Cal. Ins. Code § 332. When an insurance applicant is asked specific questions regarding medical history, "false answers thereto will vitiate the contract." *Cohen v. Penn Mut. Life Ins. Co*., 312 P.2d 241, 244 (Cal. 1957).

In *Thompson v. Occidental Life Insurance Company*, the California Supreme Court restated the long-established law of concealment in insurance contracts:

---

[3] The most significant relationship test clearly supports application of California law to all claims.

> [A]n insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical history. Material misrepresentation or concealment of such facts are grounds for rescission of the policy, and an actual intent to deceive need not be shown. Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law.
>
> On the other hand, if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for rescission. . . . Finally, as the misrepresentation must be a material one, [a]n incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer.

513 P.2d 353, 360 (Cal. 1973) (in bank) (quotations and citations omitted).

AmerUs argues that because Agnes Williams failed to disclose her history of diabetes and numerous heart ailments on the applications, it is entitled to rescind the Policies. AmerUs contends that it would not have issued the Policies had Agnes Williams disclosed her actual medical history, and that it relied in good faith on the truth of her representations in issuing the Policies. The evidence clearly establishes that the applications are replete with material misrepresentations or concealment of Agnes Williams' true medical history, and therefore, AmerUs has the right to rescind the Policies. *Cohen*, 312 P.2d at 244 ("It has been specifically held that misrepresentations as to heart symptoms render an insurance policy unenforceable.").

## V. BENEFICIARIES' RESPONSES

Beneficiaries do not dispute that the applications contain material misrepresentations concerning Agnes Williams' medical history. Rather, they offer three responses to AmerUs' argument to rescind/vitiate the Policies, in spite of Agnes Williams' untruthful answers on the applications: (1) Agnes Williams' dementia attributable to Alzheimer's disease prevented her from having any present knowledge of the facts, and caused her to fail to appreciate the

significance of the information, sought by AmerUs on the applications; (2) AmerUs has waived its right to rescind; and (3) AmerUs is estopped from rescinding the Policies.  Each of these responses will be addressed in turn.

### A.      Agnes Williams Had Alzheimer's Disease

Beneficiaries first argue that there is a genuine issue of material fact as to whether Agnes Williams had present knowledge of the facts sought by AmerUs on the applications, or was able to appreciate the significance of the information requested, because she suffered from dementia attributable to Alzheimer's disease.  As AmerUs points out, however, there is no evidence that any dementia suffered by Agnes Williams occurred when she was applying for the Policies. Beneficiaries fail to identify any medical records to show that Agnes Williams was ever diagnosed with dementia on or about May 2000, when the Policies were signed.  The medical records submitted by Beneficiaries show only that Agnes Williams suffered from dementia of an Alzheimer's type in July 2001 – more than one year after the applications were signed. Accordingly, there is no evidence that Agnes Williams did not have present knowledge of the facts, or failed to appreciate the significance of the information, sought by AmerUs on the applications.

Moreover, the fact that Agnes Williams had also misrepresented her medical history on the applications for the Interstate Policies, and agreed to a rescission of those policies when confronted with her false answers, indicates that her misrepresentations on the applications for the AmerUs Policies were not the result of dementia, but rather a scheme to defraud AmerUs. Additionally, Anne Williams and Robert Williams knew of Agnes Williams' misrepresentations in her applications for the Interstate Policies, and there is no evidence to suggest that they tried to prevent misrepresentations on the applications to AmerUs.  Beneficiaries have failed to raise a

genuine issue of material fact regarding the misrepresentations. *See TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

### B.    Waiver

Next, Beneficiaries argue that AmerUs has waived its right to rescind the Policies because it unconditionally approved and paid their claims under the Policies without a reservation of rights,[4] and failed to follow up on obvious leads indicating that Agnes Williams' answers regarding her medical history were false.

"[W]aiver is the intentional relinquishment of a known right after knowledge of the facts." *Waller v. Truck Ins. Exchange, Inc*., 900 P.2d 619, 636 (Cal. 1995). "Under California Insurance Code section 336, an insurer waives its right to receive withheld information only if it fails to make inquiries as to such information when the information is distinctly implied in other facts that are disclosed." *Casey v. Old Line Life Ins. Co*., 996 F. Supp. 939, 950 (N.D. Cal. 1998) (quotations and citations omitted). "An essential element of both estoppel and of waiver is knowledge of the true facts.  There can be no waiver of a right to charge fraud or misrepresentation, except when there is an intention to relinquish a known right." *Anaheim Builders Supply, Inc. v. Lincoln Nat'l Life Ins. Co.*, 43 Cal. Rptr. 494, 500 (Cal. Ct. App. 1965). The party claiming waiver of a right bears the burden of proving waiver by clear and convincing

---

[4] The argument that AmerUs waived its right to rescind because it failed to issue a reservation of rights is inapposite. The cases that Beneficiaries cite for this proposition are quoted out of context.  The cited cases stand for the general proposition that when an insurance company assumes defense of the insured, the insurer avoids waiver of its right to deny coverage by giving the insured notice of its reservation of rights. *See Buss v. Superior Court*, 939 P.2d 766, 784 n.27 (Cal. 1999); *Canadian Ins. Co. v. Rusty's Island Chip Co*., 42 Cal. Rptr. 2d 505, 509 (Cal. Ct. App. 1995); and *Miller v. Elite Ins. Co*., 161 Cal. Rptr. 322, 331 (Cal. Ct. App. 1980).  The principle of waiver gleaned from these cases is inapplicable to the facts of this case.

evidence; "doubtful cases will be decided against a waiver." *Waller*, 900 P.2d at 636 (quotation and citation omitted).

Beneficiaries do not allege, nor is there any evidence to suggest, that AmerUs had knowledge of Agnes Williams' diabetes or extensive history of heart ailments when it issued the Policies.  Nor can it be said that her answers to other questions on the applications distinctly implied these medical facts.  Because AmerUs was not aware of the falsity of Agnes Williams' answers on the applications at the time it issued the Policies, it is not prevented from rescinding the Policies on the basis of those material misrepresentations.

Rather, Beneficiaries argue that when AmerUs approved and paid Beneficiaries' claims under the Policies, it possessed information that implied that Agnes Williams' medical history was not what she had purported it to be, and therefore AmerUs had a duty to conduct a more thorough investigation.  Beneficiaries cite *DiPasqua v. California Western States Life Insurance Co.*, 235 P.2d 64 (Cal. Ct. App. 1951), to support this proposition, but *DiPasqua* is clearly distinguishable from the facts of this case.

 *DiPasqua* involved an insurer's issuance of a policy despite having direct knowledge that the responses on a life insurance application were false.  In *DiPasqua*, the insured, Domenico DiPasqua, did not inform the insurance company of two hospital stays.  Prior to issuing the insurance policy, the insurer conducted an independent investigation that revealed DiPasqua's answers on his application were incorrect.  The insurance company issued the life insurance policy anyway.  When DiPasqua died, the insurance company tried to cancel the policy on the basis that DiPasqua had provided false answers on his insurance application regarding his hospitalizations.  The court held that the insurance company could not cancel the policy because

of the false answers on the insurance application when the company had issued the policy with knowledge of the false answers.

As noted earlier, AmerUs did not issue the Policies with knowledge of the misrepresentations on the applications. Nor was AmerUs aware of the misrepresentations when it approved Beneficiaries' claims. AmerUs was not aware of the misrepresentations until July 2002, when it placed a hold on Beneficiaries' ProAsset Accounts – the fact that Agnes Williams had provided a false social security number on the applications, and used an alias, made it more difficult for AmerUs to discover her true medical history. While it may have been prudent for AmerUs to conduct a more thorough investigation prior to paying Beneficiaries' claims, it did not waive its right to assert fraud and misrepresentation simply because it did not immediately uncover the numerous discrepancies between recently discovered medical records and the medical responses given by Agnes Williams on the applications. *Anaheim*, 43 Cal. Rptr. at 500 ("Nor may it be said that the insurer could have waived its right to rescind, on the ground of false representations made by the insured in his answers to the questions as set forth in the application for reinstatement, until the insurer had become aware of the falsity of those representations.").

### C.     Estoppel

Finally, Beneficiaries argue that AmerUs is estopped from asserting the defenses of concealment and/or misrepresentation. "[E]stoppel is based upon the fundamental principle that one's conduct has induced another to take such a position that he will be injured if the first party is permitted to repudiate his acts." *Elliano v. Assurance Co. of America*, 83 Cal. Rptr. 509, 512 (Cal. Ct. App. 1970) (quotation and citation omitted). Like waiver, estoppel is an affirmative defense; therefore, Beneficiaries bear the burden of pleading and proving facts showing estoppel.

To prove estoppel, Beneficiaries must show that they detrimentally relied on the words or actions of AmerUs.  *See Chase v. Blue Cross of Cal.*, 50 Cal. Rptr. 2d 178, 183 (Cal. Ct. App. 1996).

Beneficiaries state that AmerUs' words and actions led them to believe that AmerUs had completed its investigation and had approved their claims unconditionally, and that they detrimentally relied on this.  Beneficiaries fail to explain, however, the nature of their reliance or how they were disadvantaged by it.  The facts demonstrate that Beneficiaries were never entitled to the proceeds of the Policies because the Policies were based on material misrepresentations, and therefore void.  There is ample evidence in the record demonstrating that Beneficiaries were aware of the misrepresentations on the applications when they signed them.  Beneficiaries cannot show that they relied to their detriment on a promise to pay benefits that they knew they were not entitled to receive.

Additionally, Beneficiaries argue that AmerUs may be estopped from asserting its claims of concealment and/or misrepresentation because it violated the California Insurance Code and Fair Claims Settlement Practices Regulations.  First, Beneficiaries cannot prove estoppel because they cannot show detrimental reliance. Second, Beneficiaries have failed to show that AmerUs actually violated any provisions of the California Insurance Code or the Fair Claims Settlement Practices Regulations.

Beneficiaries contend that AmerUs violated various provisions of the California Insurance Code and Fair Claims Settlement Practices Regulations by failing to conduct a thorough investigation of their claims, *see* 10 CCR § 2695.7(d); failing to provide notice that it needed more time to conduct an investigation, *see id*. at § 2695.7(c)(1); and failing to exercise its right to rescind the Policies before the commencement of an action on the insurance contracts, *see* Cal. Ins. Code § 650.  AmerUs clearly conducted a thorough investigation of the claims and

provided notice to Beneficiaries that it needed more time to investigate; the fact that the investigation continued after the claims had been accepted and paid, which was necessary because several of Agnes Williams' medical records did not surface until such time (again, due to the fact that she had provided a false social security number on the applications, and used an alias), is not a violation of the Fair Claims Settlement Practices Regulations.

Furthermore, Beneficiaries misconstrue California Insurance Code § 650.  Section 650 states, in relevant part:  "Whenever a right to rescind a contract of insurance is given to the insurer by any provision of this part such right may be exercised at any time previous to the commencement of an action on the contract."  Cal. Ins. Code § 650.  In *Resure, Inc. v. Superior Court*, 49 Cal. Rptr. 2d 354 (Cal. Ct. App. 1996), the court explained that § 650 was enacted when there was a significant distinction between an action on the contract at law and an action for equitable rescission.  Section 650 was intended "to guarantee that resort to equity was not needlessly made where the insurer had ample opportunity to raise the same issues in defense of the action on the policy."  *Id.* at 360.  It does not prevent an insurance company from rescinding a policy once the insurer has filed suit.  California law "clearly affords the insurer the right to avoid coverage by way of cross-claims and affirmative defenses when the insured files an action on the contract before the insurer can file its action for rescission."  *Id.* at 358.  The fact that Beneficiaries filed a lawsuit to enforce the Policies, before AmerUs filed an action to rescind the Policies, does not estop AmerUs from seeking rescission.

## VI.    CONCLUSION

The Court finds and holds that the Policies are void under California law because Agnes Williams misrepresented material facts on the applications, and AmerUs is entitled to rescind the Policies.  Because the Policies are invalid, Beneficiaries are not, and never were, entitled to the

benefits of the Policies (i.e., the funds in the ProAsset Accounts).  All of Beneficiaries' claims are premised on the validity of the Policies, therefore they necessarily fail.[5]

AmerUs' Motion for Summary Judgment (Doc. #37), Supplemental Motion for Summary Judgment (Doc. #48), and Second Supplemental Motion for Summary Judgment (Doc. #63) are **GRANTED**.  Beneficiaries' Motion for Partial Summary Judgment (Doc. #36) is **DENIED**. Beneficiaries' claims are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

SIGNED this 3rd day of August, 2005.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**

---

[5] As previously discussed, the Court is not persuaded by Beneficiaries' distinction between claims related to the Policies and claims related to the ProAsset Accounts.  The ProAsset Accounts are based on the validity of the Policies; therefore claims related to the ProAsset Accounts are inextricably linked to the Policies.